UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____X

Francis E. Bakutis,

    Plaintiff

VS.

METRO-NORTH RAILROAD
COMPANY, ET AL.,

    Defendants

Civil Action
No: 3:02CV01877(SRU)

DECEMBER 12, 2003

_____X

**FELA HEARING LOSS CASES – MAY BE FILED IN NEW HAVEN
AS ORDERED BY MAGISRATE JUDGE MARGOLIS.**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO COMPEL THE "CONRAIL DEFENDANTS"**

Pursuant to Fed. R. Civ. P. 37 and D. Conn. L. R. Civ. P. 37, the plaintiffs in the above-captioned hearing loss cases hereby move to compel Consolidated Rail Corporation ("Conrail"), American Financial Group, Inc. f/k/a American Premier Underwriters, Inc., f/k/a Penn Central Corporation (hereinafter referred to as the "Conrail Defendants") to produce documents responsive to requests for production ("RFP") (4, 5, 7, 9, 10, 13, 14, 15, 20, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33 and 35) and to respond to interrogatories (3, 4, 5, 6, 8 and 9). Since the Conrail Defendants objected to all discovery requests by claiming attorney-client privilege and work-product doctrine, the plaintiffs also move to compel the Conrail Defendants to produce a privilege log as required by D. Conn. L. R. Civ. P. 37.

**ORAL ARGUMENT REQUESTED
TESTIMONY NOT REQUIRED.**

A complete copy of the plaintiffs' discovery requests and the Conrail Defendants' responses are set forth hereto in App. A. The Conrail Defendants' responses set forth in App. A appear to be the same for all the hearing loss cases. The result of the parties' Rule 37 Conference are set forth in App. B, plaintiffs' affidavit incorporating counsel's November 21, 2003 Rule 37 Conference follow-up letter.

## A. BACKGROUND

Occupational hearing loss was recognized since the 1700's and was well documented through the 20th century. In 1966, Dr. Glorig informed the American Association of Railroads (AAR) of the need for railroads to take immediate actions to limit and minimize employee exposure to loud noises. The defendants in the instant lawsuits failed to implement hearing conservation programs in a timely fashion and when they did implement a hearing conservation program, it was inadequate and insufficient. Generally, the defendants negligently failed to provide the plaintiffs with a workplace reasonably safe from exposure to foreseeable conditions that it knew or reasonably should have known pose a risk of occupational injury. The defendants negligently failed to take steps to eliminate the risk of occupational injury pertaining to the plaintiffs' jobs, tasks and duties. The defendants failed to provide the plaintiffs with a reasonably safe place in which to work including but not limited to failing to furnish them with safe and suitable tools, appliances, equipment, premises, assistance, training, protective devices and procedures.

Some of the plaintiffs worked in the following crafts and departments:

Transportation Department, Communications and Signal Department, Bridges and Building Department, Track Department, Locomotive Engineer, Assistant Signalman, Signalman, Assistant Signal Foreman, Signal Foreman, Signal Maintainer, District Lineman, Telephone and Telegraph Maintainer, Assistant Signal Inspector, Fireman and Oiler, Steam Generator Operator, Turbine and Condenser Operator, Boiler Operator, Soot Blower, Fork Truck Operator, Laborer, Diesel Engine Compartments Cleaner, Groundmen, Apprentice Lineman, High Tension Lineman, Line Foreman, Trackman, Machine Operator; Foreman; C-Driver, Trackman Tie Jobs, Crane Operator, Foreman, Class 3 Machine Operator, Driver, Class 2 Machine Operator, Class

1 Machine Operator, Welder, Mechanic, Truck Driver, Ballast Regulator Operator, Boom Truck Operator, Back Hoe Operator, Electric Line Foreman, Retarder Mechanic, and Signal Maintainer.

Some of the plaintiffs were exposed to the following noisy equipment and work locations:

Locomotive Engines, FL 9s, Budd Cars, SPVs, Air Compressors, Hydraulic Equipment, Wheel Presses, Locomotive Test Areas, Air Brakes, Metal Cutting Lathes, Boring Mill Machines, Hilty Guns, Bolt Driver-bucket-truck motors, Diesel Shops, Diesel Engines, Diesel Generators, Generators in Power Substations, Bonding Machines, Drilling Machines, Chop Saws, Tie Gang Equipment, Track Department Equipment, Ballast Regulators, Vacuum Trucks, "Suck Trucks," Tampers, Sweepers, Welded Rail Jobs, Concrete Tie Jobs, Jackhammers, Locomotive Horns, Locomotive Whistles, Track Department Equipment Horns, Boilers, Steam Generators, Boiler Rooms, Oil Pumps, Condenser Rooms, Electric Train Engines, Drilling Machines, Chain Saws, Snow Blowers, Leaf Blowers, Hydraulic Drills, Hydraulic Saws, High Voltage Switch Explosions, Tamping Equipment, Spikers, Grinders, Bucket Trucks, Spike Pullers, Rail Saws, Tampers, Track Cranes, Pile Drivers, Sweepers, Welding Equipment, Work Trains, Tie Inserters, Tie Injectors, Power Saws, Abrasive Saws, Rail Grinders, Pneumatic Hammers, Tie Shears, Tie Handlers, Hydraulic Cranes, Burrough Cranes, American Cranes, Tie Borer, Spike Pullers, Nut Runners, Bonding Machines, Drilling Machines, Chop Saws, Little Giant Cranes, Air Compressors, Back Hoe Stamper, Scarrafire, Plate Machines, Snow Jets, Bulldozers, Lining Machines, Gas Engines and Generators, and Retarders.

Lastly, many of the plaintiffs worked for the Conrail Defendants from 1968 through 1983.

**B. LAW**

Plaintiffs' requests need only be "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26 (b)(1). The work-product doctrine is embodied in Fed. R. Civ. P. 26(b)(3), which offers qualified immunity from discovery for documents "prepared in anticipation of litigation or for trial." See, e.g., Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 471 (S.D.N.Y. 1993). To invoke the protection of the rule, the party resisting discovery bears the burden of proof to establish that the documents in question were "prepared principally or exclusively to assist in anticipated or ongoing litigation." United States v. Construction Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). Even if the document comes within the scope of the rule, the protection afforded is conditional and "may [therefore] be set aside if the discovering party demonstrates a sufficiently pressing need for the data." Bowne,

150 F.R.D. at 471. That standard requires proof that the inquiring party "has [a] substantial need of the materials in the preparation of [its] case and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 23(b)(3). See, e.g., Horn & Hardart Co. v. Pillsbury Co., 888 F.2d 8, 12 (2d Cir. 1989).

With respect to any claim of work-product privilege or attorney-client privilege, a party is required to identify the documents withheld on this basis in a privilege log. D. Conn. L. R. Civ. P. 37.

## C. REQUESTS FOR PRODUCTION

**7.    All documentation prepared by OSHA or any other federal or state agency or public or private entity relating to noise levels at defendant(s) place of business.**

**4.    All documents reflecting or pertaining to the testing of noise levels at any location where the plaintiff worked for defendant(s).**

4

The plaintiffs seek to compel the Conrail defendants to respond to these requests. Many of the plaintiffs worked for Penn Central from 1968 to 1976 and then for Conrail from 1976 to 1983, and working at several different jobs, in many different locations, and around various types of equipment and noises. The plaintiffs are entitled to all the information the Conrail Defendants possess about noise levels at its work sites and around its equipment. This information is relevant to establish the actual noise levels to which the various plaintiffs were exposed. This information also is relevant to prove what knowledge the Conrail Defendants had regarding noise levels and to show what testing they performed compared to what testing they failed to perform. If the Conrail Defendants have studies of noise levels around track equipment that took place in New Haven, this information is probative of noise levels around similar equipment even if the work location of a respective plaintiff was in New York. Moreover, even if noise level tests were performed at a location where none of the plaintiffs worked, this information is still relevant. For example, such information can be used to prove the Conrail Defendants tested some locations but were negligent in failing to test other locations. Also, if there is an OSHA report critical of noise levels at a location where no plaintiffs worked, this information is likely to be relevant in that it shows what notice the Conrail Defendants had about noise levels and risks associated with noisy work environments.

With respect to RFP 4, during the parties' Rule 37 Conference the Conrail Defendants refused to withdraw their objections and represented responsive documents would be produced no later than December 20, 2003 for the plaintiffs who have been deposed and no later than 30 days after a plaintiff's deposition for the plaintiffs who have not yet been deposed. The Conrail Defendants refused to withdraw their objections to this request. Therefore, the plaintiffs seek an order overruling the objections and compelling the Conrail Defendants to respond to this request.

**5. All documents published by defendant(s) or any organization or other group with which the defendant is or has been affiliated referring to noise exposure to railroad workers.**

During the parties' Rule 37 Conference the plaintiffs agreed to modify this request so that it only covered the time period from 1968 up to 1984; however, the Conrail Defendants refused to withdraw their objections. The plaintiffs generally claim the Conrail Defendants knew or reasonably should have known about the dangers posed by exposure to loud noises and that they failed to take reasonable steps to eliminate or reduce their exposure to noise on the railroad. The institutional knowledge of the Conrail Defendants pertaining to noise exposure to railroad workers is highly relevant. For example, if Conrail took steps in 1976 to reduce noise exposure in Philadelphia, but did not make any efforts until 1982 in New York or Connecticut, this information will help prove Conrail negligently failed to reduce plaintiffs' exposure to noise. Additionally, Conrail was a member of the American Association of Railroads ("AAR"). The AAR is a trade group for the railroad industry that frequently distributed literature and held seminars concerning health risks associated with railroad work, including exposure to noise. What knowledge the Conrail Defendants had concerning risks associated with noise exposure, when they obtained knowledge and what they did concerning railroad employees' exposure to noise is very relevant to plaintiffs' allegations of negligence. Thus, the Conrail Defendants should be compelled to produce documents in their custody or control pertaining to noise exposure of railroad workers.

**9. All documents relating to the availability of ear protectors furnished by Defendant(s) to plaintiff.**

**10. All photographs of ear protection devices used or made available to plaintiff by Defendant(s).**

Documents concerning the availability of ear protectors are relevant to prove the Conrail Defendants were negligent for failing to provide many, if not all of the aforementioned plaintiffs with ear protection. If the Conrail Defendants have any documents relating to the availability of ear protectors, they should be compelled to produce them. Likewise, photographs of any ear protection devices the defendants' claim were made available to the plaintiffs should also be produced.

Accordingly, the Conrail Defendants objections should be overruled and they should be compelled to produce responsive materials by a date certain.

**13. All written or recorded statements or memoranda of conversations with plaintiff.**

The plaintiffs are entitled to all their statements and memoranda of conversations with them. See Fed. R. Civ. P. 26(b)(3).

**14. All documents reflecting or pertaining to defendant(s) knowledge of alleged problems posed by noise exposure.**

What the Conrail Defendants knew about the risks and dangers associated with noise exposure, when they obtained any knowledge, and what they did to limit or reduce the noise exposure levels of the plaintiffs are significant issues in these hearing loss cases. The Conrail Defendants objections should be overruled and they should be compelled to provide responsive documents by a date certain.

**15. All documents reflecting or pertaining to the plaintiff's knowledge of alleged problems posed by noise exposure.**

If the Conrail Defendants possess any such documents, i.e. copies of any training or educational materials they claim were provided to the plaintiffs, they should be produced.

**20. Any and all models, diagrams, schematics or charts which depict the layout or physical arrangement of your railroad shops in which the plaintiff(s) worked.**
**22. Any photographs, copies of photographs, or any periodicals containing photographs which show the inside of your railroad shops in which plaintiff worked between the time period of 1976 to the present.**

7

The defendants claim this information seeks information protected by the work-product doctrine, yet they failed to comply with D. Conn. L. R. Civ. P. 37's requirement for the creation of a privilege log. The Conrail Defendants refused to withdraw their objections. This information will help show the location of various noise sources in relation to where various plaintiffs worked.

**24. Produce any safety or rulebook issued to employees of defendant(s) at its facilities, if any, which contain instructions on the appropriate methods of performing their jobs:**
    **(a) to avoid creating excessive noise;**
    **(b) to protect employees from adverse effects of such noise;**
    **(c) provides that violation of such rules would be a cause for some penalty against the offending employee.**

During the parties' Rule 37 conference the plaintiffs agreed to limit the time frame of this request from 1968 through 1984. The Conrail Defendants refused to withdraw their objections. The plaintiffs allege, in part, that the defendants did not act reasonably in protecting them from excessive noise. Safety and rulebooks will show what efforts, if any, the Conrail Defendants made to educate, train and inform the plaintiffs about the dangers of exposure to noise and what steps, if any, the Conrail Defendants took to limit the risks of noise induced hearing loss. Accordingly, the Conrail Defendants' objections should be overruled and they should be compelled to produce responsive documents.

**25. Any communications, instructions, directions or orders to any supervisory personnel that refers, reports, or relates to hearing loss or noise protection.**

During the parties' Rule 37 conference the plaintiffs agreed to limit the time frame of this request from 1968 through 1984. Efforts the Conrail Defendants made, if any, to educate and train supervisory personnel about hearing loss or noise protection are relevant to showing what steps, if any, were taken to limit the noise exposure encountered by the plaintiffs. This information is also important to show what the Conrail Defendants knew about hearing loss and noise protection, when they learned about hearing loss and when any mitigation efforts were attempted.

26. Produce any and all copies and samples of hearing protection provided to the plaintiff. Please include any and all purchase orders, bills and any documentation indicating when said equipment was first purchased and available to defendant(s).

During the parties' Rule 37 conference the plaintiffs agreed to limit the time frame of this request from 1968 through 1984. The Conrail Defendants claim that they acted reasonably in providing the plaintiffs with a safe place to work. The plaintiffs seek samples of any hearing protection the defendants claim to have provided to them and documentation about when such hearing protection was first purchased and made available to the plaintiffs. This information, or the lack thereof, will help prove that the Conrail Defendants did not provide the plaintiffs with a reasonably safe place to work. Accordingly, the Conrail Defendants should be compelled to produce any responsive materials.

27. With regard to defendant(s) hearing testing program, please provide any and all documentation concerning any statistics or figures on average hearing loss, total hearing loss or any statistics or compiled with regard to the hearing testing program conducted by the defendant(s).

The plaintiffs seek an order overruling the Conrail Defendants general objections to this request and requiring production of any responsive documents by a date certain.

28. Produce a copy of any and all correspondence, memoranda or tangible evidence in whatever form concerning any safety meetings, safety minutes, safety booklets, safety information or any tangible evidence concerning any written safety materials utilized at said safety meetings.

During the parties' Rule 37 conference the plaintiffs agreed to limit the time frame of this request from 1968 through 1984 and to limit the scope of the materials sought to only such documents insofar as they concern noise, hearing loss and hearing protection. The Conrail Defendants refused to withdraw their objections. This material is clearly relevant and should be produced.

29. Produce a copy of any and all tests, reports, examinations, studies, surveys or results in whatever tangible form concerning any and all inspections concerning noise levels.

During the parties' Rule 37 conference the plaintiffs agreed to limit the time period of the request to 1968 through 1984 and the plaintiffs agreed to limit the scope of the request so that it only seeks responsive documents insofar as they pertain to plaintiff's craft, equipment of similar type and kind the plaintiff worked around, tie gangs, rail gangs, surfacing gangs, and yard gangs, and the shops where the plaintiff worked and the plaintiff's work locations. The defendant refused to withdraw their objections to this request as modified. The foregoing tests and surveys about noise levels are clearly relevant. Accordingly, the Conrail Defendants should be compelled to produce all responsive documents to this request, as modified, and their objections should be overruled.

**30. Produce a copy of any and all personnel or employee records pertaining to the plaintiff and kept in the possession of the defendant(s).**

The Conrail Defendants refused to withdraw their general objection to this request. Accordingly, the plaintiffs seek an order overruling their objections so that it is clear the defendants are under a continuing duty to produce responsive documents.

**31. Any studies commissioned by the Association of American Railroads (through a technical research organization in Canada) for the purpose of determining human factors hazards inside locomotive cabs.**

During the parties' Rule 37 conference the plaintiffs agreed to modify the request so that "human factor hazards" is changed to "human health risks" since the Conrail Defendants claimed the former phrase was confusing. The Conrail Defendants refused to withdraw their objections. Accordingly, the plaintiffs seek to compel production of any responsive documents.

**32. Any "Lawshe Reports" (which were commissioned by the Association of American Railroads) which implicate certain known and understood work hazards specifically associated with the plaintiffs' job.**

10

During the parties' Rule 37 conference the plaintiffs agreed to modify the request so that "work hazard specifically associated with plaintiff's job" is clarified as "risks from exposure to noise." The Conrail Defendants refused to withdraw their objections. Accordingly, the plaintiffs seek to compel production of any such reports to the extent any exist that address risks from exposure to noise.

**33. All documents from the medical and surgical section of the Association of American Railroads relating in any way to noise-induced hearing loss.**

The Association of American Railroads (AAR) is the railroad industry trade group. Meetings of AAR members frequently discuss health issues pertaining to the railroad industry. Any such documents relating to noise induced hearing loss that are in the possession of the Conrail Defendants are clearly relevant and discoverable. Accordingly, the Court should order the defendants to produce responsive documents and overrule their objections.

**35. Any notice to the plaintiff that he has an impairment to his hearing.**

In all the hearing loss cases, the Conrail Defendants set forth an affirmative defense that the plaintiffs' claims are barred by the statute of limitations. Any documents in the defendants' possession that defendants claim show the plaintiffs had notice of an impairment to their hearing are likely relevant. Accordingly, the Court should overrule the defendants "general objection" and order them to produce responsive documents by a date certain.

## D. INTERROGATORIES

**6. Was any education program ever undertaken by defendant(s) to inform the plaintiff of company approved methods to avoid injury from noise? If so, please identify the date it commenced and the individuals who were in charge of any such educational programs.**

The Conrail Defendants completely failed to respond to this interrogatory. They did not provide the date any such program was implemented or the names of the individuals in charge of such program(s). Accordingly, the defendants objections should be overruled and they should be compelled to respond to this interrogatory.

11

**9. Identify all rules regulations or guidelines pertaining to the use of hearing protection.**

During the parties' Rule 37 Conference, the plaintiffs agreed to limit the scope of the interrogatory to "all rules, regulations or guidelines pertaining to the use of hearing protection that applied to the plaintiff, the plaintiff's craft and the work locations at which the plaintiff worked while employed by the defendants." The defendants refused to withdraw their objections. It is believed that the Conrail Defendants either failed to implement rules concerning use of hearing protection or implemented rules many years after they knew or reasonably should have known about the dangers posed by noise exposure on the railroad. Whether the Conrail Defendants made any rules or regulations pertaining to hearing protection and when they were made is clearly discoverable and relevant. Accordingly, the Conrail Defendants should be compelled to answer this interrogatory and its objections should be overruled.

**8. Please identify all tangible information from the Federal Railroad Administration concerning railroad noise, sound testing, surveys, etc.**

What the Conrail Defendants knew about railroad noise, and noise levels as well as when they obtained knowledge about these matters is relevant to assessing whether the defendants acted reasonably with respect to limiting the plaintiffs' exposure to noise. Information in the Conrail Defendants possession or control from the federal agency that governs railroads will help establish what knowledge the railroad had about railroad noise and noise levels and when they obtained such knowledge. Accordingly, the defendants' objections to this interrogatory should be overruled and they should be compelled to identify responsive documents.

**3.   Detail any steps taken by the defendant(s) to protect the plaintiff from exposure to noise while employed by defendant(s) and when such steps were implemented.**

The Conrail Defendants fail to identify the dates when it took any of the steps identified as "Hearing Conservation Measures" on page 5-8 of its objections/answer. Accordingly, the Conrail

Defendants should be compelled to set forth when the hearing conservation measures referenced on pages 5 through 8 were undertaken.

**4. For any tests performed by, under the control of, or at the request of the defendant(s) to measure the noise levels at the job site or in the facilities in which the plaintiff worked or any part thereof, please state:**
    **(a) the dates of such test or tests;**
    **(b) the person or organization administering such tests;**
    **(c) the results of such tests.**
**5. Describe steps taken by the defendant(s), if any, to abate or reduce noise levels in its facilities or on the job sites in which the plaintiff worked.**

This information is relevant to plaintiffs' claims that various work locations and equipment were excessively loud and help prove what the Conrail Defendants knew about the noise levels at various work locations and around various types of equipment. During the parties' Rule 37 conference, the Conrail Defendants represented they would supplement their answer within thirty days after each plaintiff was deposed, however, they refused to withdraw their objections. Accordingly, the plaintiffs move for an order overruling the Conrail Defendants' objections and compelling production of all responsive documents.